### SCHANKIN v. BUSKIRK.

1. Trespass—Treble Damages—Verdicts—Evidence.
    Verdict for plaintiffs in action of trespass to recover treble damages from defendant sawmill operator for cutting of 6 large trees on plaintiffs' residential lots *held*, not against the overwhelming weight of the evidence (CL 1948, § 692.451).

2. Same—Treble Damages.
    Damages in an action of trespass that are trebled under the treble damage statute represent not merely the value of the timber cut but damages to the freehold as well (CL 1948, § 692.451).

3. Same—Measure of Damages.
    Generally, damages in trespass to land are measured by the difference between the value of the land before the harm and the value after the harm, but there is no fixed, inflexible rule for determining, with mathematical certainty, what sum will compensate for the invasion of the interests of the owner.

---

References for Points in Headnotes
[1, 2] 15 Am Jur, Damages § 332; 52 Am Jur, Trespass § 58.
[3–5] 52 Am Jur, Trespass § 49; 15 Am Jur, Damages §§ 118, 119.
    Measure of damage for destruction of, or injury to, trees and shrubbery. 161 ALR 549.
[6] 15 Am Jur, Damages § 333 *et seq.*
[7] 52 Am Jur, Trespass § 58.
[8] 53 Am Jur, Trial § 143.

4. Same—Ornamental Trees—Value.

The test of value before injury and value after injury to the freehold is not necessarily the sole test in determining the amount of damage suffered by lot owners from removal of large ornamental or shade trees by trespassing defendant, it being permissible to consider the value of the trees themselves to the contemplated or existing uses of the land, including cost of replacement or restoration, where the property destroyed has a unique value of its own.

5. Same—Value of a Tree.

The value of a growing tree to a particular piece of residential property is not susceptible to precise measurement in an action of trespass for its tortious removal.

6. Damages—Evidence.

All facts and circumstances having any tendency to show damages or their probable amount may be placed before a jury, where the nature of the case is such that the amount of damages cannot be estimated with certainty.

7. Trespass—Evidence—Damages.

Verdict of $900 by jury in action of trespass under treble damage statute *held*, not in error, where evidence shows defendant cut 6 large trees on plaintiffs' 2 lots, and that the land was worth $900 less after the cutting (CL 1948, § 692.451).

8. Trial—Argument to Jury—Waiver of Right to Object.

The right to object to improper statements in argument to the jury is waived unless the attention of the trial court is called to such statements.

Appeal from Wayne; Weideman (Carl M.), J. Submitted April 11, 1958. (Docket No. 46, Calendar No. 47,405.) Decided December 2, 1958.

Trespass by Joseph F. Schankin and Marion F. Schankin against Clarence E. Buskirk, doing business as Buskirk Lumber Company, Alger Homes, Inc., a Michigan corporation, and Clayton M. Gouine for treble damages for cutting trees on residential building lots. Verdict and judgment for plaintiffs against defendant Buskirk and verdict and judgment for other defendants in common pleas court sus-

tained in circuit court. Defendant Buskirk appeals. Affirmed.

*Arthur E. Somers* and *Alexander, Cholette, Buchanan, Perkins & Conklin* (*Donald E. Miller,* of counsel), for plaintiffs.

*John von Batchelder,* for defendant Buskirk.

SMITH, J. Plaintiffs seek treble damages under the statute,* for a trespass in the course of which several trees on their land were cut down. At the time that plaintiffs, a young man and his wife, purchased the parcel of land in question, there were few houses in the neighborhood, the street that ran by had not yet been paved, and their land and the land adjoining, as well, were thickly wooded. They intended to build there and they had chosen the parcel, which is part of a suburban land development near Detroit, for the beauty of its large trees. They pictured these as surrounding their future home.

Within a year, building on a large scale started in the neighborhood. (Negotiations to purchase, May, 1952, delivery of deed, August, 1952, harm occurred, June 13, 1953.) The owner of the land adjoining plaintiffs', defendant Alger Homes, Inc., engaged the services of defendant Gouine, whose work was to clear land of trees and shrubs, and to prepare building sites. Trees to be cut were indicated by an agent of Alger Homes, Inc., but the work was not supervised. In turn, Gouine arranged with defendant Buskirk, the owner of a sawmill, for the sale of timber. Some trees were to be cut down by Buskirk's employees according to the arrangement. While it is admitted that they cut down 6 large trees on plaintiffs' land, the circumstances under which they did so are disputed.

---

* CL 1948, § 692.451 (Stat Ann § 27.2161.)

Gouine and his employees testified that stakes had been placed to mark lot lines, that brush had been cleared from the land owned by Alger Homes, Inc., up to the line separating its lots from plaintiffs', that this line could be seen without difficulty, that it had been pointed out to Buskirk's employees when they arrived in the early morning, and that they had been told to keep off the land beyond it. Gouine further testified that, in the middle of the day, he noticed them cutting just over the line and cautioned them again, that he left, and that, when he returned in the evening to pay his men, one of them told him that Buskirk's employees had gone ahead and taken all the large trees from plaintiffs' land. This his employees confirmed, adding that one of Buskirk's men had said something jokingly at the time they did the cutting about "free logs, extra money." Buskirk's employees testified that they had not seen any stakes, except perhaps some at rear of the lots, that these had not been pointed out as marking the limits within which they might cut, and that the cutting of trees on plaintiff's land was done in the morning, in Gouine's presence and under his direction.

The trial court, the court of common pleas for the city of Detroit, directed a verdict of no cause of action in favor of Alger Homes, Inc., but left to the jury the question of the liability of the other 2 defendants. The jury returned a verdict of no cause of action against Gouine, and a verdict of guilty against Buskirk. In answer to a series of special questions, the jury said that they found that the trees on plaintiffs' land had not been cut down in Gouine's presence, nor under his direction, that Buskirk's employees had been guilty of "wilfulness, wantonness, or evil design" in cutting the trees, and that the value of plaintiffs' land before the trespass had been $3,700, and after the trespass $2,800. A motion by Buskirk for judgment *non obstante veredicto,* or, in the alterna-

tive, for a new trial, was denied and judgment was entered against him for treble damages, in the amount of $2,700. The circuit court for Wayne county affirmed. Buskirk takes this appeal.

In urging that a finding of wilful trespass is "contrary to the great weight of the evidence," reliance is placed on a statement made by Gouine after this suit had been started, but before Gouine had been served with process. Buskirk, mentioning that he was involved in a suit, asked Gouine if his (Buskirk's) employees had cut any timber that Gouine had not directed them to cut. Gouine replied that they "were a good bunch of boys and they didn't cut anything that I didn't say." We cannot say that the jury was not justified in accepting Gouine's explanation of this statement, namely, that it referred to some other work. Viewing the testimony in its entirety, we cannot say that the verdict was so against the "overwhelming weight of the evidence," *Schneider* v. *Pomerville*, 348 Mich 49, that it must be set aside upon such ground.

As to the damages involved, it is settled that the damages that are to be trebled under the statute represent not merely the value of the timber cut but damages to the freehold as well. *Miller* v. *Wykoff*, 346 Mich 24. Generally speaking, damages in trespass to land are measured by the difference between the value of the land before the harm and the value after the harm, but there is no fixed, inflexible rule for determining, with mathematical certainty, what sum shall compensate for the invasion of the interests of the owner. Whatever approach is most appropriate to compensate him for his loss in the particular case should be adopted. *Allison* v. *Chandler*, 11 Mich 542; *Natural Soda Products Co.* v. *City of Los Angeles*, 23 Cal2d 193 (143 P2d 12); *Basin Oil Company* v. *Baash-Ross Tool Company*, 125 Cal App2d 578 (271 P2d 122). Thus, the dam-

ages awarded in *Miller* v. *Wykoff, supra,* reflected, in part, the value of the timber taken and, in part, the cost of restoring the land to a condition of usefulness—by filling up stump holes and cleaning up the toppings and other debris left behind by the trespassers. See, also, *Burtraw* v. *Clark,* 103 Mich 383; 2 Restatement, Torts, § 929.

On the matter of damages, it is urged to us that the destruction of the trees did not not lessen the market value of the land, and may, in truth, have increased it. Further, that the evidence supports an award of damages only for stumpage, the value of the wood taken, which is estimated at $25.50. The president of defendant Alger Homes, Inc., testified that he had purchased 30 lots in the neighborhood of the local school district at auction, within a month of the cutting, and at a price of $1,155 per lot. Plaintiffs owned a corner lot and the lot adjacent, an area approximately twice the size of one of these lots. The president further testified that in his opinion plaintiffs' property was worth, at the time of the cutting, approximately what they had paid, $1,800, but $100 more with the trees cleared away, and that it was less desirable than the other lots. We need not summarize the testimony of other witnessess so minded. They agreed, in substance, that the trees added nothing to the value of the lots and, hence, their removal did plaintiffs no hurt.

On the other hand, plaintiffs placed testimony of a tree surgeon before the jury to the effect that trees of comparable size could be purchased for about $100 each, adding to which sum labor costs in removing and replanting on plaintiffs' site, profit, and a "guarantee that it is going to live," which would bring

replacement cost* to approximately $1,500 per tree. Included in this figure was testimony as to transportation costs, since, in order to obtain trees, "we have to look to the rural sections, because people in the cities and so on, they have such a value on the tree that we couldn't even buy it." The jury had before them, at the close of proofs, a full description of the property, its costs, photographs showing the condition of the land and the character of the neighborhood, testimony as to the prices at which lots had been sold in the neighborhood, and the purchase price and replacement cost of trees similar to those destroyed. We are not, with respect to ornamental or shade trees, restricted solely to a value-before and value-after test for injury to the freehold. These are proper elements for the jury's consideration but it may consider, as well, the value of the trees themselves to the contemplated or existing uses of the land, including the cost of replacement or restoration, in those cases where, as here, the property destroyed has a unique value of its own. The doctrine was well put in *Stephenville, N. & S. T. R. Co.* v. *Baker* (Tex Civ App), 203 SW 385, 386, wherein it was held with respect to the destruction of fruit and shade trees:

"It may be true, as contended on behalf of appellant, that as a general rule trees and other things growing upon land constitute part of the realty, and that in general the correct measure of damages for injury or destruction of trees or other growths is the difference between the value of the land immediately before and immediately after the injury. But that is not an inflexible rule necessarily applicable to all conditions and to every case. In fact,

---

* See *Kelly* v. *Fine*, 354 Mich 384, wherein we held, in a case involving the removal of topsoil, that "proofs that it would cost $1,250 to restore the lot to its condition before the trespass constituted evidence from which the jury might make a determination of the loss to the freehold."

the only inflexible rule as to the measure of actual damages is the rule of compensation. * * *

"Testimony was admissible to show the value of the trees as they stood before they were injured, and the extent of their injury, and that the sum of money necessary to compensate the plaintiff for being deprived of them for the uses intended will come nearer affording actual compensation for the injuries sustained than the opinion of witnesses as to the difference in the value of the land upon which they stood immediately before and immediately after the injury."

See, also, *City of New Orleans* v. *Shreveport Oil Co.,* 170 La 431, 435 (128 So 35), where the court pointed out that

"The cases cited by the defendant relate to ordinary trespass on lands and the cutting of timber in the forests, and are clearly inapplicable to a case of wanton, not to say malicious, destruction of an ornamental or shade tree along the sidewalk and streets of a city."

The principle is similarly expressed in *Lucas* v. *Morrison* (Tex Civ App), 286 SW2d 190, involving the destruction of a shade tree upon a farm, *Gilman* v. *Brown,* 115 Wis 1 (91 NW 227), involving shade and fruit trees, *Watson* v. *Jones,* 160 Fla 819 (36 So2d 788). Admittedly, the value of a growing tree to a particular piece of residential property is not susceptible of precise measurement, but as we said in *Ruediger* v. *Klink,* 346 Mich 357, 373, 374, quoting *Allison* v. *Chandler,* 11 Mich 542, 555, 556:

"The law does not require impossibilities; and can not, therefore, require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries

are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages can not be so estimated with certainty, or only a part of them can be estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice from the court as the circumstances of the case may require, and as may tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury.

"In the adoption of this course it will seldom happen that the court, hearing the evidence, will not thereby possess the means of forming a satisfactory judgment whether the damages are unreasonable, or exorbitant; and, if satisfied they are so, the court have always the power to set aside the verdict and grant a new trial."

Upon the evidence before the jury, and in the light of these principles, we cannot say that the verdict of the jury, that the land was worth $900 less after the cutting, was in error.

The remaining errors claimed have been considered and are without merit. The court's instruction, viewed in its entirety, presents no reversible error. *Zebell* v. *Krall,* 348 Mich 482. We regard counsel's general reference in the closing argument to the special questions as improper, but not so extremely prejudicial as to be impossible of waiver by opposing counsel's failure to make seasonable and proper objection thereto. We have repeatedly held that counsel waive their right to object to improper statements in argument unless the attention

of the court is called to such statements. *Taliaferro v. Pere Marquette R. Co.,* 249 Mich 281.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.