## MARKSTROM v UNITED STATES STEEL CORPORATION

Docket No. 105307. Submitted May 4, 1989, at Marquette. Decided November 1, 1989. Leave to appeal applied for.

Louis and Shirley Markstrom, James and Janet Markstrom and Mary Markstrom brought a trespass action against United States Steel Corporation in Mackinac Circuit Court. It is undisputed that in 1975 defendant dumped an estimated 44,000 cubic yards of overburden from a limestone quarry located adjacent to a 160-acre parcel of land owned by plaintiffs on eight-tenths of an acre at the rear of plaintiffs' parcel. Since the trespass was admitted, proofs at trial related to the amount of damages and whether the trespass was intentional such as would permit the trebling of damages pursuant to statute. There was testimony that plaintiffs' land was worth $300 per acre and that the presence of the overburden would not particularly affect the value of the remainder of plaintiffs' parcel. There was also testimony that it would cost between $5 and $10 per cubic yard to remove the overburden from plaintiffs' land. The trial court, Nicholas J. Lambros, J., instructed the jury that generally damages for trespass to land is the difference in value of the land before and after the harm, but that there was no fixed inflexible rule and that the question of damages was left to the discretion of the jury. The jury determined the trespass to be intentional and the damages to be $342,000. The jury's verdict was trebled pursuant to statute. Defendant moved for a new trial, contending that the court's imprecise instruction on damages had permitted the jury to award damages on the basis of the cost of removal of the overburden rather than by the difference in value due to the trespass. The trial court denied the motion. Defendant appealed.

The Court of Appeals *held:*

1. The trial court properly refused to enforce a prior settle-

REFERENCES

Am Jur 2d, Compromise and Settlement § 32; Trespass § 51; Trial § 623.

See the Index to Annotations under Compromise and Settlement; Instructions to Jury; Trepass.

ment agreement, since it is clear that there was a mutual mistake as to a material term of the settlement agreement and the agreement did not include all the necessary parties.

2. The trial court's instruction as to damages, while correct, was so incomplete as to permit the jury to award damages on the basis of the cost of returning the land to its original state rather than the loss of value due to defendant's trespass. At the very least the jury should have been instructed that damages based on cost of repair should not exceed damages determined by loss of market value. The failure to properly instruct the jury resulted in a verdict which is inconsistent with substantial justice.

Reversed and remanded.

MURPHY, P.J., dissented. He would hold that the instruction given was proper and adequate and that the jury's verdict is not inconsistent with substantial justice. He would affirm.

1. CONTRACTS — SETTLEMENT AGREEMENTS — MUTUAL MISTAKES — MEETING OF MINDS.

A trial court may refuse to enforce a settlement agreement entered into in open court where it is clear that there was a mutual mistake concerning a material term of the settlement which prevented a meeting of the minds of the parties entering into the settlement agreement.

2. TRESPASS — DAMAGES — MEASURE OF DAMAGES — DIMINUTION OF VALUE — REPLACEMENT COST.

The proper measure of damages in an action for trespass to land is, in the absence of proof that the property destroyed had a unique value of its own, the difference between the value of the land before the harm caused by the trespass and the value of the land after the harm caused by the trespass rather than the cost of returning the property to its original condition.

3. TRIAL — JURY INSTRUCTIONS — ERRONEOUS INSTRUCTIONS — SUBSTANTIAL JUSTICE.

An error in instructions to the jury does not require reversal unless the error results in a jury verdict inconsistent with substantial justice; a jury instruction is inconsistent with substantial justice if the instruction incorrectly states the law and the jury's verdict may have been based on a misconception of the law and the issues by reason of the application of the erroneous instruction.

*Brown & Brown* (by *Prentiss M. Brown, Jr.,* and *Tom H. Evashevski*), for plaintiffs.

*Peacock & Ingleson, P.C.* (by *John W. Laudesdorff* and *John D. Peacock*), for defendant.

Before: MURPHY, P.J., and MACKENZIE and GRIFFIN, JJ.

PER CURIAM. This is a trespass action. A jury found that plaintiff property owners were damaged by defendant's trespass in the amount of $342,000 and that the trespass was deliberate. Pursuant to MCL 600.2919(1); MSA 27A.2919(1), the trial judge trebled the jury's award and entered a judgment of $1,026,000 in favor of plaintiffs. Defendant appeals as of right. We reverse and remand.

Plaintiffs own approximately 200 acres of real estate in rural Mackinac County consisting of a roadfront parcel and a 160-acre parcel. A farmhouse is located on the roadfront parcel. The 160 acres is undeveloped and for the most part uncultivated, comprised of woods which plaintiffs use for hunting. The north and east boundaries of the 160 acres adjoin a limestone quarry owned by defendant. The boundary between plaintiffs' acreage and defendant's quarry is marked by a "picket line," a strip varying in width from four to fifteen feet from which trees have been cleared.

In early 1975, defendant began overburden stripping operations, a process of removing mud and commercially unacceptable stone, and started dumping the overburden near the rear, northeast corner of the back forty of plaintiffs' 160-acre parcel. In 1976 or 1977, plaintiffs discovered that the overburden dump extended onto their land 409 feet along the north boundary and 270 feet along the east boundary. A later survey revealed that defendant had dumped an estimated 44,000 cubic yards of rock onto eight-tenths of an acre of plaintiffs' land. There was evidence that defendant had

been aware as early as the summer of 1975 that the overburden had extended onto plaintiffs' property.

Defendant has at all times admitted that it trespassed on plaintiffs' land and that it is liable for the trespass. Thus, proofs at trial centered on the amount of damages sustained by plaintiffs and whether the trespass was intentional, entitling plaintiffs to treble damages. A real estate expert appraised the value of plaintiffs' land at $300 per acre and testified that the presence of the overburden on eight-tenths of an acre at the northeast corner of the back forty would not particularly affect the value of plaintiffs' parcel because "the guy that wants to buy that back forty probably would just use it for recreation, walking through, hunting. . . . [F]or the average deer hunter it wouldn't make a lot of difference." A civil engineer testified that it would cost between $5 and $10 per cubic yard to remove the overburden deposited on plaintiffs' land. A local contractor testified that it would cost approximately $4.50 per yard to remove the rock. The jury's award of $342,000 in damages suggests that they believed plaintiffs were entitled to the cost of removing the 44,000 cubic yards of overburden and set that cost at $7.75 per cubic yard.

Approximately four years before the case went to trial, the parties and their then-attorneys appeared before the court and placed on the record a settlement indicating that defendant had agreed to pay plaintiffs damages of $3,500, conditioned on the recording of a legal description of the encroachment with the register of deeds. This settlement agreement was subsequently set aside on the basis that plaintiffs' prior attorney had failed to inform them, and failed to place on the record, that the proposed settlement included an agree-

ment that plaintiffs would grant an easement in favor of defendant over the affected area of plaintiffs' property.

On appeal, defendant first contends that the trial court erred in setting aside the settlement agreement and allowing the case to proceed to trial. We disagree. The settlement, as placed on the record, makes no mention of an easement or the transfer to defendant of any type of interest in the affected property. Plaintiffs were uninformed of the requirement that they grant an easement. It is nevertheless apparent that defendant believed it was entitled to an easement under the terms of the agreement. Thus, we must conclude that there was a mutual mistake concerning a material term of the settlement which prevented a meeting of the minds and which justified setting it aside. See generally *Siegel v Spinney,* 141 Mich App 346; 367 NW2d 860 (1985); *Scholnick's Importers-Clothiers, Inc v Lent,* 130 Mich App 104; 343 NW2d 249 (1983), lv den 419 Mich 936 (1984). Moreover, we agree with plaintiffs that, even if there had been a meeting of the minds, the failure of prior counsel to join Mary Markstrom as a necessary party under GCR 1963, 205, now MCR 2.205, made the settlement ineffective.

Defendant next contends that two improper jury instructions require reversal. We find no merit to defendant's claim that the trial court failed to adequately instruct the jury on admitted liability. Read as a whole, the instructions clearly informed the jury that, while defendant admitted responsibility for entering plaintiffs' land, defendant admitted only having committed an inadvertent and mistaken trespass. There was no error.

The same may not be said of the court's instructions on the measure of damages. The court instructed the jury as follows:

Generally speaking, damages in trespass to land are measured by the difference between the value of the land before and the value of the land after the harm, but there is no fixed, inflexible rule for determining with mathematical certainty what value shall compensate for invasion of the interest of the owner. You may take into account the fact that the trespass in this case is permanent in nature and the Plaintiffs will be permanently deprived of the portion of their property which is the subject of the trespass.

The amount of money to be awarded for the trespass cannot be proven in a precise dollar amount. The law leaves such amount up to your sound discretion. In other words, it must be to compensate Plaintiffs for their damages and not to punish the Defendant.

The court's instruction was correct but so incomplete as to require reversal. As the court stated, generally speaking, damages in cases involving trespass to land are measured by the difference between the value of the land before the harm and after the harm, but there is no fixed, inflexible rule for determining with mathematical certainty what sum shall compensate the owner. *Schankin v Buskirk,* 354 Mich 490, 494; 93 NW2d 293 (1958). However, the trial court seems to have taken this proposition as meaning that it was for the jury to decide whether the proper measure of damages was the diminution in value or the cost of returning the property to its original condition. That is not what *Schankin* held. Instead, the *Schankin* Court held that application of the general rule that diminution of value is the proper measure of damages depends on the facts of each particular case. In this regard, the *Schankin* Court noted that the cost of restoration of property to its original condition may be an appropriate consideration in cases where the property destroyed has a unique

value of its own. *Schankin, supra,* p 496. Accord: *Governale v Owosso,* 59 Mich App 756; 229 NW2d 918 (1975).

In this case, there was no evidence that the affected eight-tenths of an acre located at the rear of plaintiffs' 160 acres of undeveloped land had special value to plaintiffs. Indeed, they did not discover that the overburden had been placed on their property until 1976 or 1977, at least a year after it was first deposited. Consistent with *Schankin and Governale,* and in light of the factual circumstances of this particular case, the trial court should have instructed the jury that the appropriate measure of damages was the difference in the value of plaintiffs' land before the trespass and the value of the land after the trespass.

Plaintiffs contend that they were entitled to have the jury award damages on the basis of the cost of removal of the overburden from their property. The problem with this contention is that plaintiffs are essentially asking for an award for the cost of "repairing" the affected eight-tenths of an acre. However, it is the settled law of this state that the measure of damages to real property is the cost of repair only if the injury is reparable and the expense of repair is less than the market value of the property; otherwise, the measure of damages is the difference in the value of the property before and after the injury. See *Strzelecki v Blaser's Lakeside Industries of Rice Lake, Inc,* 133 Mich App 191; 348 NW2d 311 (1984), and cases cited therein. Thus, while plaintiffs may have been entitled to a jury instruction on the cost of repair as the measure of damages, such an instruction would have to include the caveat that cost of repair may not exceed the market value of the affected eight-tenths of an acre. In this case,

the jury was not given such a conditional instruction.

Plaintiffs also contend that to limit the jury to a determination of the amount by which the property has been diminished in value amounts to approving of a "taking" of their property by defendant. This contention is also flawed. The purpose of a damage award is to make the plaintiff whole. Compensating plaintiffs for the decline in the value of their property accomplishes that purpose. If a "taking" occurred by way of an intentional trespass, that "taking" will be punished by the imposition of statutory treble damages. Further sanctions in the form of additional compensatory damages would merely amount to a windfall to the plaintiff.

Instructional error does not require reversal unless it results in a jury verdict inconsistent with substantial justice. *Callesen v Grand Trunk W R Co,* 175 Mich App 252; 437 NW2d 372 (1989). Instructions are inconsistent with substantial justice, or manifestly unjust, if the instructions incorrectly state the law and the jury's verdict may have been based on a misconception of the law and the issues due to erroneous instructions. *Getman v Mathews,* 125 Mich App 245; 335 NW2d 671 (1983). We are convinced that, in this case, the jury instructions on the measure of damages require reversal.

Our disposition of the above issue makes it unnecessary to consider defendant's remaining claim on appeal.

Reversed and remanded. We do not retain jurisdiction.

MURPHY, P.J. *(dissenting).* The trial court's instruction to the jury on damages provided in part:

The corporation in this case, United States Steel, is entitled to the same fair and unprejudiced treatment as an individual would be under like circumstances, and it is your duty to decide the case with the same impartiality you would use in deciding a case between individuals.

*   *   *

The Plaintiffs are entitled to damages and it is your duty to determine the amount of money which reasonably, fairly and adequately compensates them for the damage you decide has resulted from the trespass of the Defendant, taking into account the nature and extent of the trespass.

*Generally speaking, damages in trespass to land are measured by the difference between the value of the land before and the value of the land after the harm, but there is no fixed, inflexible rule for determining with mathematical certainty what sum shall compensate for invasion of the interests of the owner. You may take into account the fact the trespass in this case is permanent in nature and the Plaintiffs will be permanently deprived of the portion of their property which is the subject of the trespass.*

The amount of money to be awarded for the trespass cannot be proved in a precise dollar amount. The law leaves such amount up to your sound discretion. In other words, it must be to compensate Plaintiff for his damages and not to punish the Defendant.

The owners—well, the Defendant has introduced evidence in this case of the assessed valuation on the piece of property owned by the Plaintiffs. *The assessed values are not controlling but you do have a right to consider these assessments in connection with all other evidence in arriving at the value of the property.*

The law requires assessments for real estate tax purposes to be made at 50 percent of the true cash value. [Emphasis added.]

In addition, at defendant's motion for a new trial, the court explained the following:

Now, with regard to the $342,000.00 the jury awarded, I think from the record they probably did take the value of the removal of the rock that U.S. Steel placed on the blackboard, it cost $342,000.00 to remove this overburden. I mean, that just seems to me what they did. *That was the figure they used, but it doesn't mean that's what they thought the measure was of damages in terms of the cost of removal, that's what we are giving is the cost of removal.* That is the figure that was put on the board in terms of the cost of removal. U.S. Steel could have removed it for considerably less, I think almost half of that figure, 180 or 190, I think one or the witness for U.S. Steel said it would cost them to remove the overburden. So why the jury is using that cost and didn't take the lesser value rather than the higher value I can't really say. So I can't really pinpoint why they used the figure, if it was the cost of removal. But they did in fact use the $342,000.00 figure.

The court allowed the value to be taken into account to show the nature of the overburden. I think it has relevance to, as I said prior, to the magnitude, establishing the magnitude of the trespass. An acre of property may be worth $300.00, but you have a 50 foot wall of huge stone and that's covering this, the overburden, I mean covering this land and to get into the jury along with the pictures of it, the extensive cost of removal is relevant to that *and the court didn't indicate the measure of damages was the cost of removal. It is the market value before and the value after, the record speaks for itself.*

So I think it is relevant for that purpose and the court gave, I feel, the proper jury instruction in terms of the values and they took the figure, maybe the value is the cost of removal. The cost might be the value in their minds. So it is difficult to say what they were thinking. But the court is satisfied with the verdict form and the jury verdict. [Emphasis added.]

The majority concludes that the trial court's instruction on the measure of damages was correct, but so incomplete as to require reversal. I disagree. The general rule is that damages in cases involving trespass to land are measured by the difference between the value of the land before the harm and after the harm; however, there is no fixed, inflexible rule for determining with mathematical certainty what sum shall compensate the owner. See *Schankin v Buskirk,* 354 Mich 490; 93 NW2d 293 (1958). See also *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 407; 418 NW2d 478 (1988). The majority continues that the cost of restoration of property to its original condition may be an appropriate consideration in cases where the property destroyed has a unique value of its own. The majority reasons that since there was no evidence that the land buried under fifty feet of rock had any special value to plaintiffs the trial court "should have instructed the jury that the appropriate measure of damages was the difference in the value of plaintiffs' land before the trespass and the value of the land after the trespass."

As I read the lower court's instructions, that is what the court instructed the jury the measure of damages was to be. At no time did the court tell the jury that they were to fix the measure of damages in this case as the cost to restore the property to its original condition.

The majority also cites *Strzelecki v Blaser's Lakeside Industries of Rice Lake, Inc,* 133 Mich App 191; 348 NW2d 311 (1984), for the proposition that it is the settled law of this state that the measure of damages to real property is the cost of repair only if the injury is repairable and the expense of the repair is less than the market value of the property. However, it is also settled that that rule of law applies only to cases where the

property is repairable and, more importantly, to cases involving a negligent trespass by the defendant. See *Strzelecki, supra,* p 194 and the cases cited therein. All of those cases involve a negligent trespass to the plaintiff's property.

In this case, the lower court instructed the jury that the damage here was not repairable. Moreover, the jury on a special verdict form determined that this was a case involving an intentional trespass. Therefore, the cost-of-repair measure of damages, which is not to exceed the market value of the property, does not apply.

There is no question that this case presents a unique fact situation. Moreover, instructional error does not require reversal unless it results in a jury verdict inconsistent with substantial justice. MCR 2.613(A); *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985). In addition, jury instructions are reviewed by this Court in their entirety and should not be extracted piecemeal. Whether additional instructions are necessary is a matter for case by case analysis. Reversal is not mandated unless failure to vacate the jury's verdict would be inconsistent with substantial justice. *Niemi v Upper Peninsula Orthopedic Associates, Ltd,* 173 Mich App 326, 328-329; 433 NW2d 363 (1988).

Simply, in my view, there was no instructional error by the lower court. However, even if there was any instructional error, it would be inconsistent with substantial justice to reverse this jury verdict. Again, there is no fixed, inflexible rule for determining with mathematical certainty what sum shall compensate the owner for the trespass to the plaintiffs' land by the defendant. I believe that the jury was properly instructed; and, although the jury verdict in this case is undeniably large in size, so is the pile of rock on plaintiffs'

property. For the foregoing reasons, I would affirm the jury's damage award.