# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF HELEN M. VINSON, by TERESA
VINSON-DOPP, Personal Representative,

        Plaintiff-Appellant,

v

TIMOTHY LYONS,

        Defendant,

and

NOBLE FORESTRY, INC.,

        Defendant-Appellee.

UNPUBLISHED
February 27, 2018

No. 335283
Midland Circuit Court
LC No. 12-009014-CH

---

Before: CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals by right a judgment entered following a jury trial on this trespass action brought under MCL 600.2919(1), arising from defendant Noble Forestry's removal of trees from plaintiff's property.[1] We affirm.

In August 2011, the late Helen Vinson's estate owned the real property at issue; the personal representative of the estate was Helen's daughter, Teresa Vinson-Dopp. The property was located in Midland, was about eight acres in size, and was "heavily treed."

Timothy Lyons owned the property north of the estate's property. He had purchased the property in 1979 for the purpose of developing a subdivision and his preliminary plats had been approved. Vinson-Dopp had objected to the development at public hearings in that regard. She also testified that Lyons wanted to purchase the estate property, but she was not interested. Lyons denied any such interest.

---

[1] The jury found no cause of action on plaintiff's claims against defendant Timothy Lyons, which is not challenged on appeal. Accordingly, we refer to Noble Forestry as "defendant."

In August 2011, Lyons hired defendant, Noble Forestry, to perform a selective cutting of brush and sickly trees on a portion of his property located near his proposed development. The property had been marked by survey stakes placed in the ground by a surveyor. There were also pink ribbons tied onto branches about head height. Lyons dealt directly with defendant's owner, Thomas Noble, and gave him a copy of the survey showing the property's boundaries. Lyons also walked the property with Noble and George Flogger, defendant's tree cutter, pointing out the flags and survey stakes at the boundaries and showing them where to cut on his property.

On August 11, 2011, defendant's crew was on Lyons' property performing the selective cutting. Heavy equipment was on site, including a feller buncher.[2] Flogger was operating the feller buncher when the property line was crossed and trees on the estate's property were cut down. Brett Schwenke, an environmental specialist employed by U.P. Engineers and Architects who was on Lyons' property to identify wetland areas on the day of the incident, was the first to notice that the boundary line had been crossed. Schwenke notified defendant's project foreman and all operations immediately stopped. They located the survey stake and it had been knocked over or run over by defendant's equipment. Noble and Lyons were contacted. Noble spoke to Flogger. Flogger told him that he did not see the pink ribbons and had gone over the property line. According to Lyons, both Noble and Flogger were very upset and apologetic about crossing over the property line and cutting the estate's trees.

Vinson-Dopp, however, believed that the estate's boundary line was crossed, and its trees were cut, intentionally. She testified that Lyons had approached her before and after the incident about purchasing the estate's property for his development. She refused to sell. Lyons testified that he offered to purchase the damaged portion of the estate's property for $8,000 an acre, but the property would not become part of his development because it was already platted.[3] Lyons estimated that less than an acre of the estate's property was affected by the encroachment, while Vinson-Dopp estimated that a little less than two acres was involved. Douglas Lee, a forester, testified that more than 400 trees had been cut on the estate's property, including 317 red maples, 32 black oaks, 27 juneberries, 18 aspens, 17 birches, 11 white oaks, 7 cherries, and 1 apple tree. The total market value of the damaged trees was $327.08.

On August 27, 2012, this trespass action under MCL 600.2919(1) was filed. Plaintiff asserted that despite a boundary clearly marked by survey sticks, Lyons, through his agent Noble Forestry, trespassed on the estate's property and converted hundreds of trees. Plaintiff alleged that the actions were intentional and malicious, and sought damages for the replacement value of the trees, the decreased value of the property, and for emotional distress.

In April 2014, defendant moved for partial summary disposition pursuant to MCR 2.116(C)(10), arguing in part that plaintiff was limited to recovering "actual damages," which

---

[2] A feller buncher is a very large tractor that has a circular saw on the bottom and a grapple on the back which grabs onto the tree, severs the tree at the ground, and then stacks the cut trees in bunches of five or six. The operator sits five or six feet off the ground.

[3] Vinson-Dopp testified that the taxable or assessed value of the property was $8,800 in 2011.

excluded damages for emotional distress and replacement costs. That is, plaintiff's "actual damages" were limited to the value of the trees that were cut and any change in property value caused by their removal. However, plaintiff had not established a decrease in the property value. Further, defendant argued, replacement costs were not recoverable because the trees that were cut down were not ornamental or shade trees and they did not have a unique or aesthetic value.

Plaintiff responded to defendant's motion, arguing that there was no fixed measure of damages in trespass cases so the jury may consider replacement costs. And in support of her claim for replacement costs, plaintiff quoted a poem about trees and stated that Vinson-Dopp felt "terribly violated" by the removal of the trees from the estate's property.

At oral argument on the motion defendant argued that, no matter what measure of damages is used, recovery is limited to, and cannot exceed, the value of the property—which in this case was $17,600, excepting the trebling factor if applicable. Plaintiff argued that the measure of damages should include the aesthetic value of the trees, but agreed that any recovery could not exceed the value of the property itself, excepting the trebling factor. Accordingly, the trial court held that the amount of damages recoverable by plaintiff was "limited to the value of the property in question[.]" The trial court ordered, in pertinent part, that "plaintiff can collect no more than the actual value of the property at the time of the loss as damages." Further, plaintiff could not make a claim for replacement costs or noneconomic damages, including for emotional distress. Defendant subsequently filed a motion in limine to preclude plaintiff from presenting evidence regarding replacement costs and the motion was granted on the ground that replacement costs were not relevant considering the trial court's order partially granting defendant's motion for summary disposition.

On February 10, 2016, plaintiff sought leave to file an amended complaint to add a count alleging that defendants had violated the National Resources and Environmental Protection Act (NREPA), MCL 324.52908(6), by illegally removing or cutting dozens of plants without a bill of sale. The trial court denied the motion, holding that the delayed request for amendment would unduly prejudice defendants. The matter was subsequently set for trial on September 12, 2016.

Before trial, plaintiff moved for a rehearing of the court's decision regarding damages. Plaintiff argued that the trial court had not followed the Michigan Supreme Court's order in *Weisswasser v Chernick*, 403 Mich 843; 271 NW2d 533 (1978), when determining whether plaintiff was entitled to replacement costs as a measure of damages. Plaintiff argued that the *Weisswasser* Court had affirmed the trial court's jury instructions which included that the jury could consider replacement costs.

Defendant responded that the preemptory order in *Weisswasser* did not undermine the Michigan Supreme Court's "complete, rationalized, and specific decision" in *Schankin v Buskirk*, 354 Mich 490; 93 NW2d 293 (1958)—the decision that was relied upon by the trial court. Defendant argued that the *Weisswasser* order was not binding because it did not contain a concise statement of the facts or any rationale for the decision.

The trial court denied plaintiff's motion for rehearing holding that, although replacement costs can be a measure of damages, the trees in this case did not rise to the level of uniqueness where replacement costs were warranted. Plaintiff sought leave to appeal the order and

requested peremptory reversal, which this Court denied. *Vinson-Dopp v Lyons*, unpublished order of the Court of Appeals, entered July 1, 2016 (Docket No. 332715).

Following trial, the jury found that: (1) the total amount of damages caused by defendant cutting down plaintiff's trees was $327.08, (2) the cutting was casual and involuntary, and (3) defendant was not acting as an agent of Lyons when the trees were improperly cut. The jury also found no cause of action on plaintiff's claims against Lyons. This appeal followed.

Plaintiff first argues that the trial court erred in denying her motion to amend the complaint to add a NREPA claim that was based on the same facts as plaintiff's existing claims. We disagree.

"This Court reviews for an abuse of discretion a trial court's denial of a motion to amend a complaint." *Tierney v Univ of Mich Regents*, 257 Mich App 681, 687; 669 NW2d 575 (2003). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). This Court reviews de novo issues of court rule interpretation. *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

A party may move the trial court for leave to amend a complaint and "[l]eave shall be freely given when justice so requires." MCR 2.118(A)(2). However, the trial court may deny a party's request for leave to amend the complaint for reasons of (1) undue delay, (2) bad faith, (3) dilatory motive, (4) repeated failure to cure deficiencies, (5) undue prejudice to the opposing party, or (6) futility of the amendment. *Tierney*, 257 Mich App at 687-688 (citation omitted). If the trial court denies the motion, it should state its reason for doing so. *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997).

Plaintiff contends that the trial court denied her motion to amend because of the likelihood defendants would lose on the merits and "prejudice" does not include the likelihood that the opposing party will lose on the merits of the amendment. However, plaintiff's assertion does not fairly represent the trial court's decision. The trial court denied plaintiff's motion to amend the complaint on the basis of undue delay and prejudice to defendants, not lack of defense. The court stated:

> The Court was on the eve of trying this case. And the Court would have tried the case on the allegations and the claims that were presented but for the health issue of [plaintiff's counsel].
>
> The parties were very happy to submit their claims based upon that. And the Court is of the opinion that a four-year delay now and then reopening of it with a brand new claim with the possibility that there is no defense other than the existence of a bill of sale and the principal person for whom that knowledge may be has passed away, and that the other Defendant is an individual who has had this matter pending now for four years while this litigation has gone on, under allegations that the party that had brought it was completely satisfied with, does find it is unnecessary delay. It does create undue hardship and prejudice to the Defendants, and I'll deny the motion to amend.

-4-

A motion to amend should not be denied because of delay alone. *Weymers*, 454 Mich at 659. However, if the delay caused the opposing party to suffer actual prejudice, such motion may be properly denied. *Id*. Prejudice that will justify a denial of the motion arises when the amendment would prevent the opposing party from having a fair trial. *Id*. However, the prejudice must result from the fact that the new allegations are offered late, and not from the fact that the defendant may lose on the merits. *Id*. While leave to amend complaints should be freely given, "that interest must be weighed against the parties' and the public's interest in the speedy resolution of disputes." *Id*. at 660.

In this case, plaintiff filed her complaint in August 2012, discovery had closed in April 2014, a trial date had already been adjourned because of plaintiff's counsel's illness, and plaintiff sought to amend her complaint in February 2016—almost four years after this case was filed. Plaintiff concedes on appeal that amendment would have required reopening discovery. Further, while this case was pending, an important witness died and it was likely that necessary evidence would be unavailable following his death. Noble, the sole owner of defendant, died in October 2015. Noble was the person who entered into the written contract with Lyons, defendant's office was located in Noble's house, and Noble stated that the contract was probably in his office. And as plaintiff's counsel noted at the hearing on the motion to amend, the issue whether a bill of sale existed was relevant to a claim brought under MCL 324.52908(6). Prejudice exists when the opposing party would not be able to receive a fair trial, such as when "the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id*. at 659.

In summary, the circumstances of this case included a proposed amendment four years after the filing of the complaint, long after discovery had closed, after trial had been scheduled and adjourned, and after the death of an important witness. The trial court's decision to deny plaintiff's proposed amendment on the basis of undue delay and prejudice to defendants did not fall outside the range of reasonable and principled outcomes. See *Maldonado*, 476 Mich at 388.

Next, plaintiff argues that the trial court erred in precluding from the jury's consideration replacement costs for trees cut down as an element of damages under MCL 600.2919(1)(a). We disagree.

The jury was precluded from considering replacement costs because the trial court denied plaintiff's motion for rehearing of its previous decision regarding damages, holding that, although replacement costs could be a measure of damages, the trees in this case did not rise to the level of uniqueness where replacement costs were warranted. A trial court's denial of a motion for rehearing or reconsideration is reviewed for an abuse of discretion. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 540; 687 NW2d 143 (2004).

Plaintiff argues that the trial court should have allowed evidence that it would cost approximately $1.1 million to replace the trees wrongfully cut because replacement costs are a measure of damages. First, during oral argument on defendant's motion for partial summary disposition plaintiff's counsel conceded that any damages recovered, by whatever measure,

-5-

could not exceed the value of the property itself, excepting the trebling factor.[4] And in 2011 the taxable or assessed value of the property was $8,800 according to Vinson-Dopp. Thus, the argument that plaintiff could have potentially recovered $1.1 million is without merit.

Second, contrary to plaintiff's argument, the trial court did not hold that replacement costs are never an element of damages under MCL 600.2919(1). Rather, the trial court held that, in this case, replacement costs were not warranted because plaintiff failed to establish that the trees had a unique value to the property. And plaintiff failed to show that the trial court made a palpable error in that regard. See *id*. (citation omitted).

In general, MCL 600.2919(1) provides that any person who cuts down or injures any trees on another's land without permission is liable to the owner "for 3 times the amount of actual damages" unless it appears that the trespass was casual and involuntary, or the defendant had probable cause to believe that the land was his own. In such cases, the plaintiff is entitled to only single damages. MCL 600.2919(1).

In *Schankin*, 354 Mich at 494, our Supreme Court specifically addressed the measure of damages available in trespass to land cases involving cut trees, stating:

> As to the damages involved, it is settled that the damages that are to be trebled under the statute represent not merely the value of the timber cut but damages to the freehold as well. Generally speaking, damages in trespass to land are measured by the difference between the value of the land before the harm and the value after the harm, but there is no fixed, inflexible rule for determining, with mathematical certainty, what sum shall compensate him for the invasion of the interests of the owner. Whatever approach is most appropriate to compensate him for his loss in the particular case should be adopted. [*Id*. (citation omitted).]

In *Schankin*, the plaintiffs purchased a parcel in the suburbs of Detroit "for the beauty of its large trees." *Id*. at 492. The defendants cut down six large trees on the plaintiff's land while cutting trees to develop adjoining property. *Id*. Although stakes had been placed to mark the lot lines, the defendants said they had not seen the stakes. *Id*. at 493. The jury found that the cutting had been willful and awarded treble damages. *Id*. at 493-494.

On appeal, the defendants argued that the destruction of the trees did not lessen the property's market value, but rather increased it, so the only damage available to the plaintiff was the value of the wood taken. *Id*. at 495. The *Schankin* Court disagreed with the defendants and concluded that the trial court had properly admitted testimony regarding the cost to replace the trees because they were ornamental or shade trees, i.e., trees that had a unique value considering the contemplated or existing use of the land. *Id*. at 495-496. The Court summarized:

---

[4] Thus, contrary to plaintiff's additional argument, the trial court did not impose a "statutory cap" by limiting the amount of damages that could be awarded to "the actual value of the property at the time of the loss."

> We are not, with respect to ornamental or shade trees, restricted solely to a value-before and value-after test for injury to the freehold. These are proper elements for the jury's consideration but it may consider, as well, the value of the trees themselves to the contemplated or existing uses of the land, including the cost of replacement or restoration, in those cases where, as here, the property destroyed has a unique value of its own. [*Id*. at 496 (emphasis added).]

The *Schankin* Court supported its conclusion with citation to cases that included the wanton, malicious "destruction of an ornamental or shade tree," "the destruction of a shade tree upon a farm," and a case involving "shade and fruit trees[.]" *Id*. at 497 (quotation marks and citations omitted).

In this case, however, plaintiff failed to establish that the trees cut down caused damage to the freehold or had a unique value of their own. *Id*. at 494, 496. The trees were simply ordinary trees in a forest of trees on the property. Plaintiff provided no evidence that the trees in this case, which were at the back of the estate's property, were shade or ornamental trees, or trees that had a unique or aesthetic value considering the contemplated or existing use of the property. While there is no fixed, inflexible rule with regard to compensating a plaintiff for the losses incurred, the plaintiff must show that a loss was incurred. For example, in *Szymanski v Brown*, 221 Mich App 423, 425, 430-431; 562 NW2d 212 (1997), replacement costs were allowed as a measure of damages because the plaintiff used his property as a nature preserve—a use that was destroyed by the trespass. But in *Governale v City of Owosso*, 59 Mich App 756, 761; 229 NW2d 918 (1975), replacement costs were not awarded because the land was "unimproved and marshy." Considering the facts of this case, which are more similar to those of *Governale*, the trial court chose an approach that was appropriate. See *Schankin*, 354 Mich at 494. Accordingly, as the trial court held, plaintiff failed to establish that the trees in this case had a unique value to the property warranting the consideration of replacement costs as a measure of damages; thus, the jury was properly precluded from considering the issue.

Further, we reject plaintiff's argument that the trial court was required to rule consistent with an order issued by our Supreme Court in *Weisswasser*, 403 Mich at 843. That order reversed this Court's decision "for the reason that the trial court's instructions on the determination of damages were not erroneous." The *Weisswasser* order does not contain a concise statement of facts or any rationale for the decision. *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993); *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006). Accordingly, the trial court was not required to issue a ruling consistent with that order. But in any case, as discussed above, the trial court did recognize that replacement costs could be a proper measure of damages, but held that they were not appropriate in this particular case.

Finally, plaintiff argues that the trial court erred in admitting Lyons's testimony regarding statements made by Noble because they were irrelevant and constituted hearsay. We disagree.

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388. This Court reviews de novo the preliminary questions

of law related to the admission of evidence. *In re Martin*, 316 Mich App 73, 80; 896 NW2d 452 (2016).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible, unless it is subject to a hearsay exception. MRE 802. An exception exists for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ." MRE 803(3). "Before a statement may be admitted under MRE 803(3), the trial court must first determine that the declarant's state of mind is a relevant issue." *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Dorsey (On Remand)*, 273 Mich App 26, 36; 730 NW2d 17 (2006) (*UAW*).

The trial court may only admit relevant evidence. MRE 402. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable than it would be without the evidence. MRE 401. Evidence is relevant if it is offered to prove or disprove a matter of consequence to the case. *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 731; 761 NW2d 454 (2008). A fact is material if it is within the range of litigated matters in controversy. *Id*.

Here, plaintiff contends that Lyons's testimony about what Noble's state of mind was after the trees were cut down constituted inadmissible hearsay because Noble did not cut down the trees and was not present when the trees were cut down; thus, his state of mind was irrelevant. The trial court ruled that Noble's state of mind was a relevant issue because plaintiff was arguing that defendant intentionally cut the trees down which entitled her to treble damages under MCL 600.2919(1). We agree with the trial court. Noble was the sole owner of defendant. Flogger, who operated the cutter, was part of Noble's crew. Lyons testified that Noble said that the cutting down of plaintiff's trees was an accident and he was very sorry. Accordingly, the evidence concerned facts within the range of matters litigated in the controversy, and it tended to disprove that the trespass was intentional. The trial court did not abuse its discretion by ruling that this evidence was relevant.

And the statements fell within the hearsay exception in MRE 803(3). Statements regarding plans and state of mind that demonstrate motive are admissible under MRE 803(3). *People v Ortiz*, 249 Mich App 297, 310; 642 NW2d 417 (2001). The challenged statements here are Noble's statements to Lyons two days after the incident that he would make it right by the property owner, it was an accident, and he was very sorry. These are statements concerning plan, motive, and state of mind, respectively. They were not statements of memory or belief. See MRE 803(3). Accordingly, the trial court did not abuse its discretion by ruling that these statements were admissible under MRE 803(3) because admission of these statements fell within the range of reasonable and principled outcomes.

To the extent that plaintiff is challenging as hearsay Lyons's statements that Noble appeared to be "[d]istraught," "very upset," and "shocked that it had happened," we conclude that these were not hearsay statements. Nonverbal conduct is considered to be a statement only "if it is intended by the person as an assertion." MRE 801(a)(2). A witness's demeanor is not

assertive conduct unless it is intended as a statement. *People v Davis*, 139 Mich App 811, 813; 363 NW2d 35 (1984). In this case, Lyons testified about his personal observations of Noble, and there was no indication that Noble intended his nonverbal conduct to be an assertion. Accordingly, Noble's conduct was not a "statement" and Lyons's testimony that Noble appeared to be distraught, upset, and shocked was not hearsay. This evidence was also relevant because it tended to disprove that the trespass was intentional. Accordingly, the trial court did not abuse its discretion by admitting Lyons's testimony in this regard.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering