*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WENDY VANDERPOOL and KEVIN VANDERPOOL,

UNPUBLISHED
February 17, 2022

Plaintiffs-Appellants/Cross-Appellees,

v

CHAD W. HART and HART BROTHERS, LLC,

No. 356643
Lenawee Circuit Court
LC No. 18-006087-CZ

Defendants-Appellees/Cross-Appellants.

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and CAMERON, JJ.

PER CURIAM.

Plaintiffs Kevin and Wendy Vanderpool appeal the trial court's opinion and order granting judgment in favor of plaintiffs following a bench trial. Defendants Chad Hart and Hart Brothers, LLC, cross-appeal the trial court's decision to deny their motion for dismissal. We affirm.

## I. BACKGROUND

In 2015, plaintiffs sold Hart Brothers a parcel of land that adjoined plaintiffs' property. Chad, who worked for Hart Brothers, cleared an entire row of trees that stood on the border of the parties' properties in 2016. Chad believed that he had the right to cut down the trees because they were on Hart Brother's property. Plaintiffs disagreed and hired arborist Mark Webber to determine the value of the trees that were removed. Webber determined that 20 large, healthy trees were cut down. According to Webber, it would cost $149,310.57 to replace all of the trees.

In August 2018, plaintiffs filed suit, alleging in relevant part that defendants had violated MCL 600.2919(1)(a). The bench trial commenced in December 2020. Michael Bartolo, who plaintiffs hired to survey the properties in 2014, testified that the tree row "mostly straddled the [property] line." Bartolo could not recall how many trees were located on plaintiffs' property or on the boundary line, and Kevin was only able to recall that a "big," "old hickory tree" was located on plaintiffs' property. Charles Robertson, a logger who was familiar with technology used to

-1-

locate boundary lines, testified that all the trees were located on the Hart Brothers' property and that removing them increased the value of the property.

Defendants moved for involuntary dismissal, arguing that plaintiffs had not "provided a competent measure of damages" because they had failed to meet their burden of establishing how many trees and what types of trees stood on their property in 2016. Defendants also argued that the correct measure of damages was the diminution of plaintiffs' land value following the removal of the trees and that plaintiffs had failed to present any evidence to support that the value of their property had decreased. The trial court denied defendants' motion, concluding that plaintiffs had brought forth sufficient evidence concerning damages and that the replacement cost of the trees was the appropriate measure of damages.

In March 2021, the trial court issued an opinion and judgment in favor of plaintiffs. The trial court found that Bartolo's testimony concerning the location of the boundary line was the most credible. This finding "result[ed] in the conclusion that some of the trees were on Plaintiffs' property, some of the trees were on Defendants' property, and some of the trees were centered on the property line to be shared by both parties." Although the trial court concluded that other "trees belonging to Plaintiffs . . . were destroyed by defendants," the court found that "there is virtually no evidence of which trees were on either side of the property line, and which trees were directly on top of the dividing line." The trial court found that the only evidence supporting damages was Kevin's testimony that Chad had cut down plaintiffs' "big," "old hickory tree." The trial court awarded replacement damages for the hickory tree in the amount of $13,501.98, but concluded that it was "unable to estimate further damages without evidence of which of the trees felled by Defendants actually belonged to Plaintiffs." These appeals followed.

## II. PLAINTIFFS' ARGUMENT ON APPEAL

Plaintiffs argue on appeal that the trial court failed to "adequately compensate" them "for their loss as the Court's decision and findings demonstrate that there were additional trees that were either on Plaintiffs['] . . . property or were on the boundary line[.]" We disagree that plaintiffs are entitled to additional relief.

"A trial court's factual findings in a bench trial are reviewed for clear error," *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 59; 698 NW2d 900 (2005), and we also review "the trial court's determination of damages following a bench trial for clear error," *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). However, to the extent that the proper measure of damages involves a question of law, our review is de novo. *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses[.]" *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (alteration in original; quotation marks and citations omitted).

In Michigan, an action for trespass and the conversion of trees is governed by statute. Under MCL 600.2919,

> (1) Any person who:
>
> (a) cuts down or carries off any wood, underwood, trees, or timber or despoils or injures any trees on another's lands . . .
>
> * * *
>
> without the permission of the owner of the lands, or on the lands or commons of any city, township, village, or other public corporation without license to do so, is liable to the owner of the land or the public corporation for 3 times the amount of actual damages. If upon the trial of an action under this provision or any other action for trespass on lands it appears that the trespass was casual and involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own, or that the wood, trees, or timber taken were taken for the purpose of making or repairing any public road or bridge judgment shall be given for the amount of single damages only.

Thus, a landowner has a cause of action and a right to treble damages of "the amount of actual damages" when a person intentionally trespasses and harms the landowner's property. MCL 600.2919(1). However, "a trespasser's good faith and honest belief that he possessed the legal authority to commit the complained-of act are sufficient to avoid treble damage liability." *Boylan v Fifty Eight, LLC*, 289 Mich App 709, 725-726; 808 NW2d 277 (2010) (alteration, quotation marks, and citation omitted).[1]

In this case, the trial court found that plaintiffs were not entitled to treble damages because defendants' trespass was based on "a good faith and honest belief that they owned the entire tree line which they removed." Plaintiffs do not challenge these findings. Instead, plaintiffs argue that the trial court should have awarded additional damages given its finding that "multiple trees" were located either on plaintiffs' property "or on the boundary that separated the property of the parties."

"A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable. Damages, however, are not speculative simply because they cannot be ascertained with mathematical precision." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005) (citation omitted). "[I]t is sufficient if a reasonable basis for computation exists[.]" *Id*. A damages award is not clearly erroneous if it is within the range of the evidence presented, and it "appears that the trial court was aware of the issues in the case and

---

[1] Plaintiffs also cite MCL 600.2919(2)(a) on appeal. To the extent that this statutory provision applies, plaintiffs are not entitled to additional relief for the reasons discussed later in this opinion.

correctly applied the law." *Alan Custom Homes, Inc*, 256 Mich App at 516 (quotation marks and citation omitted).

In this case, the trial court found that defendants had cut down one "big," "old hickory tree" that belonged to plaintiffs and that defendants had also cut down "other trees" that were located on plaintiffs' property and/or the property line.[2] Nonetheless, the trial court concluded that plaintiffs had failed to present evidence as to the number and type of "other trees" that were cut down. More specifically, the trial court found

> [w]hile there is extensive testimony about the number, type, and size of the trees that existed in the line of trees at issue in this matter, there is simply no evidence aside from Mr. Vanderpool's testimony which would allow the Court to determine which trees were either on Plaintiffs' land or on the common boundary line. . . .
>
> \* \* \*
>
> Plaintiffs have not even established the number of trees which they had an interest in, though it is clear that they did not have an interest in all twenty trees evaluated by Mr. Webber. Plaintiffs have failed to meet their burden of demonstrating the loss of any other trees on their side of the property line, or held in common on the boundary line.

Accordingly, the trial court only awarded damages for the hickory tree. We conclude that the trial court did not clearly err in doing so.

Webber testified that he evaluated the replacement cost of the trees[3] by considering the following factors: (1) the size of the tree, (2) the species of the tree, (3) the tree's location, and (4) the condition of the tree. Webber estimated that the cost to replace *all* of the trees was $149,310.57. Webber testified that, based on his communications with Wendy, he believed that all of the removed trees belonged to plaintiffs. Webber further testified that he had "no way of knowing if they were or were not on" plaintiffs' property.

While Kevin testified that a "big," "old hickory tree" was located on plaintiffs' property, no other evidence was presented to support that plaintiffs had an ownership interest in any of the other trees that were removed. Wendy testified that she would defer to Bartolo concerning the location of the property line, and Bartolo was only able to recall that the tree row "mostly straddled the line[,] meaning some of the tree row was on one side [of the property line], [and] some of the tree row was [on] the other side[.]" When Bartolo was asked if he could "identify the number of trees that were on one side of the property line versus the other," Bartolo responded, "No." Although Bartolo recalled that there were "older, mature trees" in the tree line, he was unable to

---

[2] A tree that is located on a boundary line "is the common property of both parties, and neither has the right to cut, injure, or destroy it without consent of the other." *Lennon v Terrall*, 260 Mich 100, 100-101; 244 NW2d 245 (1932).

[3] As will be discussed later in this opinion, the trial court did not err by determining that the replacement value of the trees was the appropriate measure of damages.

recall where the trees were located. He also agreed that tree rows can contain "all types of species of trees[.]" Because plaintiffs failed to prove additional "damages with reasonable certainty" and because "damages predicated on speculation and conjecture are not recoverable," *Health Call of Detroit*, 268 Mich App at 96, the trial court did not clearly err by only awarding damages with respect to the hickory tree.

## III. DEFENDANTS' ARGUMENT ON CROSS-APPEAL

Defendants argue on cross-appeal that the trial court erred when it denied their motion for dismissal because the appropriate measure of damages for plaintiffs' loss was "the difference between the value of the land immediately before and immediately after the injury" and because there was no evidence to support that the value of plaintiffs' land was diminished as a result of the trees being removed. We disagree.

We review questions of law, such as the proper measure of damages, de novo. *2000 Baum Family Trust*, 488 Mich at 143. When a defendant moves for a directed verdict in a bench trial, the motion is properly treated as a motion for involuntary dismissal under MCR 2.504(B)(2). *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 235 n 2; 615 NW2d 241 (2000). We review the trial court's ultimate decision on such a motion de novo. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).

A motion for involuntary dismissal tests the factual sufficiency of a claim. *2 Crooked Creek, LLC v Cass Co Treasurer*, 329 Mich App 22, 41; 941 NW2d 88 (2019). "[A] motion for involuntary dismissal calls upon the trial judge to exercise his [or her] function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences. Plaintiff is not given the advantage of the most favorable interpretation of the evidence." *Id*. at 41-42 (quotation marks and citation omitted).

As discussed earlier, MCL 600.2919 provides for damages for a plaintiff whose trees were wrongfully cut down by a trespassing defendant. In *Schankin v Buskirk*, 354 Mich 490, 494; 93 NW2d 293 (1958), our Supreme Court specifically addressed the measure of damages available in trespass to land cases involving cut trees, stating:

> Generally speaking, damages in trespass to land are measured by the difference between the value of the land before the harm and the value after the harm, but there is no fixed, inflexible rule for determining, with mathematical certainty, what sum shall compensate for the invasion of the interests of the owner. Whatever approach is most appropriate to compensate him for his loss in the particular case should be adopted.

In *Schankin*, the plaintiffs purchased a parcel in the suburbs of Detroit "for the beauty of its large trees." *Id*. at 492. The defendant cut down six large trees on the plaintiff's land while cutting trees to develop adjoining property. *Id*. Although stakes had been placed to mark the lot lines, the defendant's employees said they had not seen the stakes. *Id*. at 493. The jury found that the cutting had been willful and awarded treble damages. *Id*. at 493-494.

On appeal, the defendant argued that the only relief available to the plaintiffs was the value of the wood taken because the destruction of the trees increased the market value of the property.

*Id*. at 495. The *Schankin* Court disagreed with the defendant and concluded that the trial court had properly admitted evidence regarding the cost to replace the trees because they were ornamental or shade trees, i.e., trees that had a unique value considering the contemplated or existing use of the land. *Id*. at 495-496, 498. The Court summarized:

> We are not, with respect to ornamental or shade trees, restricted solely to a value-before and value-after test for injury to the freehold. These are proper elements for the jury's consideration but it may consider, as well, the value of the trees themselves to the contemplated or existing uses of the land, including the cost of replacement or restoration, in those cases where, as here, the property destroyed has a unique value of its own. [*Id*. at 496.]

The *Schankin* Court supported its conclusion with citations to cases that included the wanton and malicious "destruction of an ornamental or shade tree," "the destruction of a shade tree upon a farm," and a case involving "shade and fruit trees[.]" *Id*. at 497 (quotation marks and citation omitted).

In *Szymanski v Brown*, 221 Mich App 423, 429-431; 562 NW2d 212 (1997), this Court affirmed the trial court's conclusion that replacement costs were allowed as a measure of damages. In *Szymanski*, the plaintiff "use[d] his property as a nature preserve and claim[ed] to derive aesthetic and spiritual satisfaction from visiting the property and observing nature in a pristine state." *Id*. at 425-426. The defendant, who owned an adjacent parcel of property, used bulldozers to "destroy[] more than five hundred mature trees" on the plaintiff's property and further "removed the topsoil necessary for regrowth and regeneration of the cleared area" and "otherwise scarred the earth." *Id*. at 426-427. In *Thiele v Detroit Edison Co*, 184 Mich App 542, 545; 458 NW2d 655 (1990), this Court concluded that the trial court erred by granting the defendant's motion for directed verdict where evidence was presented at trial that the plaintiff had specifically purchased a parcel of property "because of its beauty and because she could sit and enjoy it," and where the defendant destroyed the property's "aesthetic value" when it "tortiously cut down and destroyed eight trees."

Contrary to defendants' arguments on cross-appeal, plaintiffs presented evidence that the trees had a unique or aesthetic value. Plaintiffs testified that they had enjoyed the trees for many years and that the trees had sentimental value. Wendy testified that her family had picnicked in the shade of the trees, taken family photographs amongst the trees, and enjoyed looking at the trees throughout the seasons. According to Wendy, the area where the trees were located was her family's "sanctuary," and plaintiffs both testified that they had ridden horses and motorcycles in that area and that one of their sons had used the tree line to hunt. Wendy indicated that she was "a wildlife person" who "love[d] animals[.]" According to Wendy, many animals had lived amongst the trees over the years, including a crane, which she enjoyed watching. Wendy believed that the absence of the trees had "taken away" the animals' "habitat." She also testified that the missing trees harmed the overall aesthetic value of the property, noting that the absence of the trees "change[d] the whole look."

Thus, like the plaintiffs in *Schankin*, *Szymanski*, and *Thiele*, plaintiffs in this case presented evidence that the trees had a unique or aesthetic value. Because the trial court clearly found plaintiffs' testimony to be credible, the trial court did not err by determining that the replacement

value of the trees was the appropriate measure of damages. Consequently, the trial court did not err by denying defendants' motion for dismissal.

Affirmed.


/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron