*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DETAILS AUTOMOTIVE FINISHES, LLC,

        Plaintiff-Appellee,

v

FOUR CHILDRENS ENTERPRISES, LLC and
LACRESHA WARE,

        Defendants-Appellees,

and

BUCHAREST INVESTMENTS, LLC,

        Defendant,

and

GAYANGA COMPANY, LLC and BRIAN
MCKINNEY,

        Defendants-Appellants.

UNPUBLISHED
April 21, 2022

No.  355711
Wayne Circuit Court
LC No.  18-005305-CH

DETAILS AUTOMOTIVE FINISHES, LLC,

        Plaintiff-Appellee,

v

FOUR CHILDRENS ENTERPRISES, LLC and
LACRESHA WARE,

        Defendants-Appellants,

and

No.  356324
Wayne Circuit Court
LC No.  18-005305-CH

-1-

BUCHAREST INVESTMENTS, LLC,

   Defendant,

and

GAYANGA COMPANY, LLC and BRIAN
MCKINNEY,

   Defendants-Appellees.

_____

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

  In these consolidated[1] appeals involving a real property dispute, defendants appeal as of right the trial court's judgment in favor of the plaintiff that followed a bench trial. In Docket No. 355711, defendants Brian McKinney and Gayanga Company, LLC (Gayanga) appeal the portion of the trial court's judgment holding them liable and assessing damages for trespass. In Docket No. 356324, defendants Lecresha Ware and Four Childrens Enterprises, LLC (FCE), appeal the portion of the trial court's judgment assessing damages against them for slander of title. For the reasons set forth in this opinion, we affirm in part, reverse and vacate in part, and remand for further proceedings.[2]

---

[1] *Details Automotive Finishes LLC v Four Childrens Enterprises LLC*, unpublished order of the Court of Appeals, entered August 10, 2021 (Docket Nos. 355711 and 356324).

[2] We reject plaintiff's argument that this Court lacks jurisdiction over McKinney and Gayanga's appeal because their claim of appeal was filed prematurely. Plaintiff argues that because McKinney and Gayanga filed their claim of appeal after the trial court issued its written findings of fact and conclusions of law on November 18, 2020, but before the trial court entered its judgment on January 27, 2021, which resolved the amount of attorney fees issue that had been left open in the earlier findings of fact and conclusions of law, McKinney and Gayanga were not appealing "the final order" in this case. In general terms, this Court has jurisdiction over an appeal of right filed by an aggrieved party from a final judgment or final order of the circuit court. MCR 7.203(A)(1). However, this Court may also grant leave to appeal from "a judgment or order of the circuit court and court of claims that is not a final judgment appealable of right," MCR 7.203(B)(1), or "any judgment or order when an appeal of right could have been taken but was not timely filed," MCR 7.203(B)(5). Plaintiff does not claim that McKinney and Gayanga would not have been entitled to an appeal of right had they waited for the trial court to enter its judgment on January 27, 2021, before filing their claim of appeal. Moreover, "there can be more than one final judgment

-2-

# I. BACKGROUND

On November 30, 2015, plaintiff acquired by quitclaim deed real property at 14360 Washburn Street in Detroit (the "Washburn property") through a tax foreclosure proceeding. Defendants Ware and/or FCE were the previous owners of the property.[3] Ware and/or FCE also owned adjacent parcels at 14385 Wyoming Street and 14365 Wyoming Street. Plaintiff's founder, Shannon Ferguson, testified that he purchased the Washburn property so he could expand his business. After purchasing the property, plaintiff discovered trucks, construction equipment,[4] and boxes of files on the property. Access to the Washburn property from the public right-of-way on Washburn Street was blocked by a concrete barrier. In March 2016, plaintiff brought eviction proceedings against all occupants of the Washburn property and obtained a judgment of possession and writ of eviction. There was testimony that Ware was present when a court officer carried out the eviction order at the property and that Ware told the court officer that she had not been notified of the eviction. There was also testimony that it was necessary to hire a locksmith to cut the lock on a gate on Wyoming Street in order to enter the Washburn property to execute the eviction because the Washburn entrance was blocked. Ferguson told Ware at the eviction that she could remove her personal property, but she was not interested in retaining much of it. By July 15, 2016, plaintiff installed a gate in the concrete wall in order to permit access to the property from Washburn Street.

Ware subsequently executed a quitclaim deed dated May 17, 2017, purporting to convey the Washburn property from FCE to defendant Bucharest Investments. This deed was recorded. In July 2017, plaintiff was attempting to sell the Washburn property and plaintiff learned at this time of the May 17, 2017 deed and Ware's attempt to transfer the Washburn property to Bucharest. In July, plaintiff had agreed to sell the Washburn property to Kenji Lemon for $150,000, but Lemon became uninterested in completing the transaction once it was learned that plaintiff could not provide clear title.

---

or order in an action." *Avery v Demetropoulos*, 209 Mich App 500, 503; 531 NW2d 720 (1994). Here, the trial court indicated its decisions regarding the liabilities of the parties and all damages other than attorney fees in its November 18, 2020 findings of fact and conclusions of law. These decisions were repeated in the January 27, 2021 judgement, with the addition of the court's resolution of the attorney fee amount. "An order to allow attorney fees after entry of an order disposing of the meritorious question is one of the specific circumstances where separate final orders are recognized." *Id*.; see also MCR 7.202(6)(a)(*iv*) (stating that "a postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.625 or other law or court rule" is a final judgment or final order). We are not convinced that we lack jurisdiction over this matter. However, even assuming without deciding that plaintiff's characterization of the November 18, 2020 findings of fact and conclusions of law is correct, we would treat this appeal as being on leave granted. MCR 7.203(B); *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998).

[3] Ware testified that she had been a managing member of FCE.

[4] Plaintiff's property manager described this construction equipment as "[b]arricade, fencing, boxes of nails like general construction—style equipment."

Additionally, Ware also conveyed the adjacent Wyoming parcels (14385 Wyoming Street and 14365 Wyoming Street) from FCE to defendant McKinney by quitclaim deeds in 2017. McKinney was in the business of performing construction engineering and demolition services. He testified that he founded Gayanga at some point after plaintiff's March 2016 eviction proceedings involving the Washburn property. McKinney testified that he acquired the 14385 and 14365 Wyoming parcels in 2017 to use for his business purposes. Ware testified that she knew McKinney because she worked for him as an estimator at Gayanga beginning in 2017. She also testified that before she conveyed the Wyoming properties to Gayanga in 2017, Gayanga was not using the property and was leasing space in a different location. Ware testified that she thought she stopped storing her equipment on the Washburn property in 2018. Ware claimed that she could not definitively identify property and heavy equipment depicted in photographs of the parcels, but she acknowledged that she and McKinney (including Gayanga) were the only individuals to have such equipment on these parcels.

At trial, McKinney did not claim any ownership interest in the Washburn property and he denied having any connection to Bucharest. McKinney used a gate located on Wyoming Street and apparently located partially on both the 14365 Wyoming property and a separate parcel owned by a railroad company, to access his Wyoming properties. McKinney had a key to open this gate. He acknowledged that he had to cross a portion of the railroad's parcel in order to get to his property through this gate. Ware testified that when she had owned all three of these properties, she used this entrance to access the entire area consisting of the three adjoining parcels because the Washburn property was "in the middle of everything" and she did not know that it had a separate address. Ware thought "it was all one space."

Plaintiff's property manager, Tepi-Ara Aalakebuan, testified that when he visited the Washburn property on January 12, 2018, he entered through the Washburn gate entrance and he discovered miscellaneous equipment being stored on the property that had not been there at the time the eviction order was executed in 2016. He also discovered a "breached door that was previously closed and locked." The locks had been broken. Aalakebuan testified that he was approached by some workers who told him that he was trespassing and needed to leave. A worker was driving an excavator or bulldozer. The workers claimed to work for McKinney. When Aalakebuan called Ware to inform her that he was on the property, she indicated that "she had nothing to do with the property" and that Aalakebuan needed to call McKinney. One of the workers then handed Aalakebuan a phone and someone claiming to be McKinney told Aalakebuan that he was trespassing, that he needed to "get off," and that he would be "forcefully removed" if he did not leave. McKinney also told Aalakebuan that a letter had been sent to plaintiff explaining that plaintiff was trespassing. McKinney further claimed that "the property was landlocked and [Aalakebuan] had no legal access." Aalakebuan did not enter the property again after this conversation. Ferguson testified that he received the letter from Gayanga's attorney in January 2018 asserting that plaintiff was trespassing. Ferguson stated that at this point, plaintiff had no access to its property or ability to use it.

On January 15, 2018, Aalakebuan observed new signs warning against trespass that had been posted on the outside of the Washburn gate plaintiff had installed. Aalakebuan did not post these signs and he did not know who had posted them. On February 19, 2018, Aalakebuan took an aerial photograph with a drone that depicted a new pile of dirt on the Washburn property with an excavator sitting on the dirt pile. Three days later, Aalakebuan observed by drone that there

were piles of dirt, machinery, and "breached" doors on the property. Aalakebuan again took aerial photographs showing "another pile of dirt with breached doors" on April 14, 2018, although he did not know if the doors had been closed between February and April because "outside of these aerials we had no access to the property."

On May 10, 2018, plaintiff filed a complaint to quiet title to the Washburn property, as well as seeking injunctive relief and damages. In the complaint, plaintiff alleged that Ware and FCE had unlawfully clouded plaintiff's title to the Washburn property by fraudulently conveying a deed for this property to Bucharest despite knowing that they had no legal interest to convey. Plaintiff also alleged that a March 5, 2017 quitclaim deed purporting to transfer the 14365 Wyoming parcel from FCE to McKinney contained the legal description for the Washburn property. Plaintiff alleged that McKinney and Gayanga were wrongfully occupying and denying plaintiff's access to the Washburn property and that these acts constituted a trespass on plaintiff's property and unlawful taking of plaintiff's property interest. Plaintiff requested that the court quiet title to the Washburn property in plaintiff's favor. Plaintiff also raised a slander-of-title claim and sought injunctive relief and damages based on these allegations.

Nonetheless, there was evidence that the Washburn property was still being used by some entity other than plaintiff. A drone aerial photograph from July 25, 2018, showed an absence of dirt piles, damage to plaintiff's building, and the storage of more new machinery. Aalakebuan testified that an aerial photograph taken on September 1, 2018, depicted "excavator dump trailers or gravel trains along with additional equipment on the property," as well as "a concrete barrier blocking the access gate that we put in from Washburn Street." Aalakebuan explained that he did not install the concrete barrier. Aerial photographs from September 2019, showed excavators, trucks and other equipment on the property in front of plaintiff's building, as well as additional barriers blocking access to the property through the Washburn gate.

With respect to the court proceedings, a default was entered against FCE. Plaintiff and defendants Ware, McKinney, and Gayanga entered into a stipulation that essentially quieted title to the Washburn property in favor of plaintiff and required defendants to remove any equipment and property from the Washburn property and refrain from blocking plaintiff's access to the Washburn property. The matter proceeded to a bench trial that began on March 9, 2020. Although the record is somewhat unclear, it does indicate plaintiff received a deed for the property from Bucharest by the time of trial and that plaintiff was no longer pursuing any claims against Bucharest in this litigation.

The trial evidence reflected that plaintiff had not used the Washburn property during 2017, 2018, and 2019. Aalakebuan referred to photographs that had been admitted as exhibits showing trucks and equipment that had been located on the Washburn property currently being stored on Gayanga's adjacent property. Ferguson testified that he had never authorized any entity to store dirt or equipment on the Washburn property. Ferguson testified that he was seeking damages for defendants' unlawful use of his property that prevented plaintiff from selling, leasing, or using its property for a period of 22 months from January 2018 to October 2019. He maintained at trial that "currently despite having the deeds cleared up and all of those things there still [has] been activity at the property which has nothing to do with us with heavy equipment and machinery being moved and placed around the building consistently." Aalakebuan testified that Mckinney was "not in the picture" at the time of the 2016 eviction. Plaintiff presented evidence that the current market value

-5-

of the Washburn property was approximately $148,000 and that the current market lease value of the property was approximately $2,500 or $2,900 per month.

Ware testified that she never attempted to block the Washburn Street access point and that she had never damaged plaintiff's property. She also testified that she allowed plaintiff to access the Washburn property through the Wyoming Street entrance when plaintiff initially purchased the property, at which time she still owned the Wyoming properties. McKinney also denied any responsibility for erecting any concrete barrier. McKinney admitted to storing machinery, equipment, and dirt on the Washburn property, but he apparently conceded only to doing so temporarily as he was clearing debris from his property. McKinney testified that he was not on the property in 2016. He also testified that there was a lot of old equipment already on the site when he purchased the Wyoming properties from Ware in 2017. According to McKinney, he started purchasing excavators in 2017 and received delivery of his first excavator in January 2018. Before that time, he rented equipment to use for his jobs and he claimed that the equipment he rented was not being stored on the Washburn property.

Following the bench trial, the trial court quieted title to the Washburn property in favor of plaintiff. The trial court found that Ware executed the deed for the Washburn property to Bucharest without a legal basis to do so, knowing that her rights and the rights of FCE had been extinguished through the tax sale, and with the requisite intent to harass or intimidate plaintiff as the rightful owner. The trial court then awarded plaintiff damages of $163,800 for slander of title against Ware and FCE jointly and severally, consisting of $150,000 as compensation for the lost sale of the property to Lemon and $13,800 for plaintiff's 2016 eviction costs and other expenses in physically removing personal property from the premises and making repairs or improvements. The trial court also ordered that Ware and FCE were jointly and severally liable for plaintiff's actual attorney fees of $30,100.26. Finally, the trial court found McKinney and Gayanga liable for trespass, jointly and severally, in the amount of $130,000, which represented the fair monthly rental cost of $2,500 per month for a 52-month period of using the Washburn property for storage. The trial court ordered McKinney and Gayanga to remove barriers to the Washburn Street access and to improve the driveway with gravel.

These appeals followed.

## I.  DOCKET NO. 355711

### A.  LIABILITY FOR TRESPASS

Defendants McKinney and Gayanga first argue that the trial court abused its discretion by granting plaintiff relief for trespass when plaintiff did not raise a trespass claim in its complaint or amend its pleadings to include a trespass claim.

"Decisions concerning the meaning and scope of pleadings fall within the sound discretion of the trial court," *Dacon v Transue*, 441 Mich 315, 328; 490 NW2d 369 (1992), as are "decisions granting or denying motions to amend pleadings," *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). Reversal of such decisions on appeal is only appropriate if the trial court abused its discretion. *Dacon*, 441 Mich at 328; *Weymers*, 454 Mich at 654. "A trial court abuses

its discretion only when its decision results in an outcome falling outside the range of principled outcomes." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 692; 777 NW2d 511 (2009).

During closing arguments at trial, plaintiff's counsel argued that the acts of McKinney and Gayanga constituted trespass that entitled plaintiff to injunctive relief and money damages. Plaintiff's counsel referenced language under the third count of the complaint alleging that the actions of McKinney and Gayanga "constituted a trespass and an unlawful encroachment on Plaintiff's property." Defendants' counsel argued in response that plaintiff's trespass claim was a new legal theory that was not raised in the complaint because plaintiff's complaint referred to "trespass" within the allegations under Count 3, which was titled "Injunctive Relief." Defendants' counsel thus maintained that plaintiff only pled a claim for injunctive relief and not trespass.

Following the bench trial, the trial court issued written findings of fact and conclusions of law in which it ruled as follows regarding this issue:

> Count III of the Complaint was entitled Injunctive Relief. Despite the name of the count, the substance of the claim is trespass. In Paragraph 41, Detail Auto alleges that he actions of Defendant Gayanga constitute trespass, unlawful encroachment, and unlawful taking. In the demand for relief, Detail Auto requests a determination that the actions of Gayanga constituted a trespass and requests money damages and injunctive relief. The court finds that Detail Auto has met its burden to establish trespass against Gayanga and Brian McKinney and is entitled to both money damages and injunctive relief.

On appeal, defendants McKinney and Gayanga argue that "the trial court abused its discretion by amending the Plaintiff's pleading *sua sponte* to include a claim for trespass against the Appellants." McKinney and Gayanga maintain that plaintiff's complaint did not allege a claim of trespass, that plaintiff never moved to amend its pleadings, and that plaintiff could not have shown an absence of prejudice to defendants McKinney and Gayanga that would have permitted the trial court to allow plaintiff to amend its pleadings pursuant to MCR 2.118(C).

"Michigan is a notice-pleading state." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010) (quotation marks and citation omitted; alteration in original). "All that is required is that the complaint set forth 'allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]' " *Johnson*, 292 Mich App at 368, quoting MCR 2.111(B)(1)[5] (alteration in original). "Courts are not bound by the labels that parties attach to their claims," and it is "well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature

---

[5] Under MCR 2.111(B)(1), a "complaint . . . must contain . . . [a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]"

of the claim." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012) (quotation marks and citation omitted); see also *Johnson*, 292 Mich App at 368 ("[I]t is well settled that we will look beyond mere procedural labels and read the complaint as a whole when ascertaining the exact nature of a plaintiff's claims.").

A trespass is "an unauthorized invasion on the private property of another," *Dalley*, 287 Mich App at 315, infringing "the plaintiff's interest in the exclusive possession of his land," *id*. at 320 (quotation marks and citation omitted). To recover on a claim for trespass to land, there must be "proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession," and the intrusion must have been "intentional." *Terlecki v Stewart*, 278 Mich App 644, 654; 754 NW2d 899 (2008) (quotation marks and citation omitted). "Under the common law, a trespass on land violated the landowner's right to exclude others from the premises." *Dalley*, 287 Mich App at 320.

Here, plaintiff's complaint alleged that it was the sole owner of the Washburn property and that McKinney was involved with Gayanga and was Gayanga's resident agent. The complaint alleged that Gayanga was an adjoining neighbor of plaintiff, that Gayanga was "occupying" plaintiff's Washburn property, that Gayanga was "claiming possession" of the Washburn property, and that Gayanga was "denying Plaintiff access to its property." Plaintiff's complaint referred to a letter, which was addressed to plaintiff and attached to the complaint as an exhibit, in which an attorney representing Gayanga asserted that the Washburn property was "located on" Gayanga's property, that the Washburn property could only be accessed by entering Gayanga's property, and that Gayanga had not granted plaintiff permission to enter Gayanga's property. This letter further stated that if plaintiff entered the property, "we will be forced to prosecute in any way possible the trespass." The letter was dated January 9, 2018. The complaint alleged that Gayanga's actions "constitute a trespass and unlawful encroachment upon Plaintiff's property and an unlawful taking of Plaintiff's property interest in 14360 Washburn . . . ." The complaint sought relief in the form of injunctive relief and damages for the asserted trespass.

Reading the complaint as a whole, it becomes clear plaintiff's claim was that Gayanga was intentionally interfering with plaintiff's exclusive possession of its Washburn property by occupying the property without plaintiff's authorization and actively denying plaintiff's ability to access the property. *Johnson*, 292 Mich App at 368; *Dalley*, 287 Mich App at 315, 320; *Terlecki*, 278 Mich App at 654. The heavy reliance by McKinney and Gayanga on the fact that plaintiff labeled its claim "Injunctive Relief" rather than "Trespass" is of no merit because courts are not bound by a party's choice of procedural label for its claim. *Buhalis*, 296 Mich App 691-692. Moreover, "an injunction is an equitable remedy, not an independent cause of action." *Terlecki*, 278 Mich App at 663. It is evident from the language of the complaint as a whole that plaintiff sought the equitable remedy of an injunction, as well as money damages, based on alleging an underlying claim of trespass. The trial court thus did not abuse its discretion in concluding that the substance of plaintiff's claim against McKinney and Gayanga was trespass. *Buhalis*, 296 Mich App 691-692. Accordingly, the trial court also did not sua sponte permit plaintiff to amend its complaint as McKinney and Gayanga argue. No relief is warranted.

## B. CALCULATION OF DAMAGES FOR TRESPASS

McKinney and Gayanga also argue that the trial court clearly erred in its calculation of damages for trespass because it was based on a 52-month period of trespass that is not supported by the evidence.

"We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Chelsea Investment Group, LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "This Court reviews the trial court's determination of damages following a bench trial for clear error." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Chelsea Investment Group*, 288 Mich App at 251. Although "damages that are speculative or based on conjecture are not recoverable," it is not required "that damages be determined with mathematical certainty; rather, it is sufficient if a reasonable basis for computation exists." *Id*. at 255.

"Generally speaking, damages in trespass to land are measured by the difference between the value of the land before the harm and the value after the harm, but there is no fixed, inflexible rule for determining, with mathematical certainty, what sum shall compensate for the invasion of the interests of the owner." *Schankin v Buskirk*, 354 Mich 490, 494; 93 NW2d 293 (1958). The measure of damages based on the difference between the value of the land before and after the harm "may, but does not always, accurately measure the harm to the owner's interest." *Thiele v Detroit Edison Co*, 184 Mich App 542, 544-545; 458 NW2d 655 (1990). The "ultimate goal" in awarding damages for trespass is "compensation for the harm or damage done." *Kratze v Indep Order of Oddfellows, Garden City Lodge No 11*, 442 Mich 136, 149; 500 NW2d 115 (1993). Accordingly, courts may employ the method of calculating damages that is most appropriate to compensate the plaintiff for the loss incurred under the facts of a particular case. *Id*.; *Schankin*, 354 Mich at 494; *Szymanski v Brown*, 221 Mich App 423, 430; 562 NW2d 212 (1997); *Thiele*, 184 Mich App at 545. "[W]here a party commits a trespass he must be held to contemplate all the damages which may legitimately follow from his illegal act." *Allison v Chandler*, 11 Mich 542, 561 (1863).

Here, the trial court's damage calculation was based on its conclusion that McKinney and Gayanga had trespassed on plaintiff's property, or prevented plaintiff's access to the property, from December 2015 through March 9, 2020, which was the date of trial. In support of its conclusion that McKinney and Gayanga's trespass began in December 2015, the trial court found that McKinney and Gayanga's property and equipment was present on the Washburn property at the time plaintiff purchased the parcel, that McKinney and Gayanga failed to remove their property and continued to use plaintiff's property and block plaintiff's access until the time of trial, and that McKinney told plaintiff before McKinney had obtained title to the adjacent Wyoming properties to leave the property because plaintiff was trespassing.

However, our review of the record has not uncovered any evidence to support a conclusion that McKinney, Gayanga, or equipment owned by either McKinney or Gayanga was ever on the Washburn property as early as December 2015. Plaintiff also does not direct our attention to any such evidence in the record, but instead relies on speculative hypotheses about how McKinney could have been involved in trespassing on plaintiff's property at a time earlier than the record evidence actually supports. The trial court appears to have primarily relied on a series of specific photographic trial exhibits to support its conclusion that McKinney and Gayanga's trespass began

-9-

in December 2015. These exhibits have not been presented to this Court for our review, but the trial testimony regarding their admission indicates that all of the photographs cited by the trial court regarding this issue were taken in 2018 and 2019. Furthermore, contrary to the finding of the trial court, the only evidence that McKinney ever was involved in claiming that plaintiff was trespassing by accessing its Washburn property indicates that this incident occurred in January 2018, after McKinney had obtained title to the Wyoming properties. The evidence cited by the trial court to support its factual finding regarding the beginning of the trespass committed by McKinney and Gayanga does not establish any connection between the Washburn property and McKinney or Gayanga as early as December 2015.

Because there is no record evidence that would permit the conclusion that McKinney and Gayanga trespassed on plaintiff's property as early as December 2015, the trial court clearly erred by finding that this was the starting date of the trespass period. *Chelsea Inv Group*, 288 Mich App at 250. The trial court's calculation of damages based on this erroneous period is thus also clearly erroneous. *Id*. We vacate the trial court's damages award against McKinney and Gayanga and remand for recalculation of the damages against these parties for their trespass.

## II. DOCKET NO. 356324

In Docket No. 356324, defendants Ware and FCE challenge the trial court's calculation of damages against them for slander of title.

As we already noted, our review of a trial court's determination of damages after a bench trial is for clear error. *Alan Custom Homes*, 256 Mich App at 513.

The trial court awarded plaintiff damages against Ware and FCE for slander of title pursuant to MCL 600.2907a(1), which provides as follows:

> (1) A person who violates section 25 of chapter 65 of the Revised Statutes of 1846, being section 565.25 of the Michigan Compiled Laws, by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person is liable to the owner of the property encumbered for all of the following:
>
> (a) All of the costs incurred in bringing an action under section 25 of chapter 65 of the Revised Statutes of 1846, including actual attorney fees.
>
> (b) All damages the owner of the property may have sustained as a result of the filing of the encumbrance.
>
> (c) Exemplary damages.

Ware and FCE first argue on appeal that the trial court clearly erred by awarding damages of $150,000 for the lost sale of the property because "the alleged lost property sale to one Kenji Lemon, which is the only potential sale of the property for which evidence was presented at trial, clearly did not cause the Plaintiff to incur $150,000 in damages, especially given that the Court has quieted title to the subject property in the Plaintiff, allowing Plaintiff to keep the property." Ware and FCE maintain that because plaintiff retained title to the property and there was evidence

that the fair market value of the property was $148,000, plaintiff only incurred $2,000 in damages based on the lost sale. Ware and FCE additionally argue that the trial court clearly erred by ordering them to be liable for $13,800 in damages for expenses that plaintiff incurred in 2016 when the slander of title on which Ware and FCE's liability was predicated did not occur until 2017.

The arguments advanced by Ware and FCE implicate MCL 600.2907a(1)(b),[6] which authorizes recovery of "[a]ll damages the owner of the property may have sustained *as a result of the filing of the encumbrance*." (Emphasis added.) A slander-of-title claim requires the plaintiff to demonstrate that the damages sought were caused by the defendant's act that constituted the disparagement or slander of the plaintiff's title. *GKC Mich Theaters, Inc v Grand Mall*, 222 Mich App 294, 301; 564 NW2d 117 (1997); see also MCL 600.2907a(1)(b). In *GKC Mich Theaters*, 222 Mich App at 304, this Court adopted the "substantial-factor test" from 3 Restatement Torts, 2d, § 632, p 352, as the "appropriate test to determine whether causation exists in a slander of title claim." This Court quoted the Restatement test as follows:

> The publication of an injurious falsehood is a legal cause of pecuniary loss if
>
> (a) it is a substantial factor in bringing about the loss, and
>
> (b) there is no rule of law relieving the publisher from liability because of the manner in which the publication has resulted in the loss. [*GKC Mich Theaters*, 222 Mich App at 302, quoting Restatement, § 632 (quotation marks omitted).]

This Court continued by stating that

[c]omment c of § 632 explains the meaning of the phrase "substantial factor":

> In order for the false statement to be a substantial factor in determining the conduct of an intending or potential purchaser or lessee, it is not necessary that the conduct should be determined exclusively or even predominantly by the publication of the statement. It is enough that the disparagement is a factor in determining his decision, even though he is influenced by other factors without which he would not decide to act as he does. Thus many considerations may combine to make an intending purchaser decide to break a contract or to withdraw or refrain from making an offer. If, however, the publication of the disparaging matter is one of the considerations that has substantial weight, the publication of

---

[6] The trial court specifically declined, in its written findings of fact and conclusions of law, to award exemplary damages. Accordingly, the trial court's damage award for slander of title cannot be justified by citation to MCL 600.2907a(1)(c), and we need not address this particular provision in this opinion. However, in light of our conclusion that the trial court's damage award must be vacated because it was clearly erroneous, MCL 600.2907a(1)(c) may be addressed on remand in recalculating damages if applicable. We express no opinion on this issue.

-11-

the disparaging matter is a substantial factor in preventing the sale and thus bringing financial loss upon the owner of the thing in question. *GKC Mich Theaters*, 222 Mich App at 302-303, quoting Restatement, § 632.]

In *GKC Mich Theaters*, 222 Mich App at 304-305, this Court held that there were genuine issues of material fact regarding "whether the filing of the invalid notice of termination [of easement] was a substantial factor in the purchaser's decision to delay the sale of the property" such that the determination should have been made by the trier of fact and the grant of summary disposition was improper.

In this case, although there is record support for the trial court's conclusion that the acts of Ware (apparently acting on behalf of defaulted party FCE) constituting slander of title were a substantial factor causing the loss of the sale from plaintiff to Lemon, there is no evidence to support a conclusion that the loss of this sale caused plaintiff $150,000 in damages. It is true that plaintiff had agreed to sell the Washburn property to Lemon for $150,000. However, after the sale fell through and at the conclusion of the trial below, title to the property remained with plaintiff. The trial court found that the fair market value of the property was $148,000 based on the evidence submitted by plaintiff at trial. Thus, although plaintiff lost the opportunity to sell the property for $150,000, plaintiff still retained the real property with a value of $148,000, thereby mitigating the damages incurred from the lost sale. The trial court therefore clearly erred by determining that plaintiff had suffered a loss of $150,000 that was caused by Ware and FCE's slander of title. *GKC Mich Theaters, Inc v Grand Mall*, 222 Mich App 294, 301-304; MCL 600.2907a(1)(b).

The trial court also clearly erred in its additional award of $13,800 in damages[7] that were based on expenses plaintiff incurred related to the eviction and other work performed on the property in 2016; all of these expenses were incurred before Ware committed the act constituting slander of title and such damages therefore were not attributable to the disparagement of plaintiff's title. *GKC Mich Theaters, Inc v Grand Mall*, 222 Mich App 294, 301-304; MCL 600.2907a(1)(b). Accordingly, we vacate the trial court's damage award for the slander-of-title claim and remand for recalculation of the appropriate damages.[8]

---

[7] This amount consisted of separately incurred expenses of $10,200, $3,300, and $300, all of which were incurred in 2016.

[8] Plaintiff argues that the challenge to damages raised by Ware and FCE is "waived" because Ware and FCE did not object to plaintiff's evidence of damages at trial. However, even accepting all of plaintiff's evidence of damages as true, there was still no basis for the trial court to award damages against Ware and FCE for slander of title based on the entire sale price of the lost sale or expenses incurred by plaintiff before the slander of title was committed. We have thoroughly explained our reasoning for that conclusion in the body of this opinion. We therefore reject plaintiff's claim of waiver. Moreover, we also reject plaintiff's argument that this issue is not preserved for appeal. Ware and FCE challenge the trial court's findings on damages following a bench trial, and they were not required to object to those findings below in order to preserve this appellate challenge. MCR 2.517(A)(7).

Affirmed in part, reversed and vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No party having prevailed in full, no costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto

Furthermore, plaintiff's assertion that the trial court's award of damages is proper because Ware and FCE committed slander of title with respect to the 2016 eviction proceedings is also without merit. The trial court unequivocally found that the acts constituting slander of title were those related to the purported transfer of the Washburn property to Bucharest by quitclaim deed dated March 5, 2017, and the recording of this deed, where FCE and Ware had no legal basis at that time for effectuating such a transfer. Liability for slander of title is predicated on the "recording of an instrument." See MCL 565.25(3); see also MCL 600.2907a(1). There is no evidence that Ware or FCE recorded any instrument that could have slandered title during the 2016 eviction proceedings.